In the Matter of the Estate of LOUISIANA BROWN, Deceased.

Surrogate's Court, Kings County, October 3, 1934.

*Weinstein & Levinson*, for the creditor-applicant.

*Clarence R. Freeman*, for the executrix of the deceased administrator, respondent.

WINGATE, S. Two questions respecting the right to receive letters of administration *de bonis non* are involved in the present proceeding. The first raises a point upon which no directly pertinent adjudication has apparently ever been made. The basic principles respecting the second are well established by repeated determinations.

Letters of administration upon the estate of the present decedent were issued to Austin Louis Brown, her sole heir and next of kin, on August 25, 1931. He entered upon the discharge of his duties and died on July 28, 1934, prior to their completion.

The question is now raised as to the person entitled to appointment as administrator *de bonis non* in his place. In such a contingency, section 136 of the Surrogate's Court Act directs that "the surrogate must grant letters   *   *   *   in like manner as if the former letters had not been issued," which enactment remits the determination of the person entitled to section 118 which specifies the order of priority in this connection.

In the case at bar the rival claimants for appointment are a creditor of the estate on the one hand, and the mother of the deceased administrator on the other. The latter is the executrix and sole beneficiary under the duly probated will of the deceased administrator, as well as his sole heir at law and next of kin. Each of the applicants bases her right to appointment on subdivision 6 of section 118, which directs the grant of administration "To any other next of kin entitled to share in the distribution of the estate, preference being given to the person entitled to take the largest share in the estate."

The creditor-applicant "is a grandniece and a step-granddaughter" of the decedent, while the deceased administrator was a grandson. As this court pointed out in *Matter of Gant* (142 Misc.

446, 449), " next of kin " means the person or persons entitled to take a share in the unbequeathed assets of a decedent in accordance with the provisions of article 3 of the Decedent Estate Law. Obviously a person bearing the remote relationship to the decedent possessed by this applicant was not her next of kin while a grandson was living. Furthermore, since by the terms of section 136, the rights of rival claimants to the office of administrator *de bonis non* must be determined as if no original administration had ever been granted, the priorities of the claimants to appointment must be viewed as of the time of the death of the particular decedent whose estate is involved in the application. (*Tilliman* v. *Davis,* 95 N. Y. 17, 24; *New York Life Ins. & Trust Co.* v. *Winthrop,* 237 id. 93, 108; *Matter of Storum,* 220 App. Div. 472, 476; *Matter of Hall,* 141 Misc. 169, 171; affd., 234 App. Div. 151; *Matter of Tiffany,* 137 Misc. 627, 631; *Matter of Duff,* 143 id. 905, 906.) It is patent, therefore, that the creditor — grandniece — applicant is not and never was a next of kin of this decedent and is, therefore, not within the description of subdivision 6 of section 118 of the Surrogate's Court Act as such.

It is apparent from her petition that the applicant sensed this difficulty since, whereas she pressed her own claims to appointment, she sought in the alternative the issuance of letters to the public administrator. In other words, while she would like, if possible, to take the administration of the estate into her own hands, her chief desire is to prevent the issuance of letters to the sole distributee and executrix of the estate of the former administrator.

The rights of the latter are, of course, merely derivative from her testator, and are based on the provision of section 118 which specifies that " if a person entitled to take all the personal estate * * * has died, his * * * legal representative * * * shall have a prior right to letters in his place and stead."

It is upon the proper interpretation of this enactment and upon the meaning of the preceding phrase, " next of kin entitled to share in the distribution of the estate," that the main argument of the applicant is predicated. It is claimed by her that the estate is insolvent and that she and those whom she represents are its sole creditors. Both of these conditions are denied, wherefore, if the issue were deemed material to the determination, a trial for its solution would be necessary.

It is argued by the applicant that, in view of this alleged condition, neither the decedent's grandson nor his estate subsequent to his death are entitled to any " share in the distribution of the estate," but that the whole thereof must be paid to the applicant as a creditor and to the others in like position, who are acting in

concert with her. The correctness of this position depends wholly‵ upon the connotation of the word " distribution " and as to whether the payment of a creditor's claim is properly so to be classified.

In *Thomson* v. *Tracy* (60 N. Y. 174) the Court of Appeals, in the course of an extended examination of the general subject, said (at p. 180): " In general, the term ' distribution,' when applied to the estate of a deceased person, refers to the ultimate division of the estate among the next of kin, in case of intestacy, or among the beneficiaries under a will, after the estate is free from debt.   *   *   * There is   *   *   *   no recognition whatever of the applicability of that term to the payment of the debts of a deceased person by his executors or administrators."

Under this authoritative statement, it is obvious that the person and the only person who was " entitled to " or had a right " to share in the distribution of " the decedent's estate at the time of her death was her grandson, the deceased administrator. This right has passed to his executrix by operation of law. Whereas this right may prove valueless from a financial standpoint, depending on extraneous eventualities, the outcome in this regard in no wise impairs its existence or validity.

Not only is this result obvious on an application of pure logic, but the opposite conclusion would produce untold consequences of inconvenience and confusion. If the right to distribution were dependent upon the solvency of the estate, the propriety or impropriety of the appointment of any person under subdivision 6 of section 118 would in the majority of cases depend on the day to day fluctuations of the stock market or the opinions of alleged experts in the values of real or personal property. Each such application would require a preliminary determination as to the value of the assets of the estate and the extent and validity of the claims against it, the greater part of which information would be absolutely unascertainable to the average applicant or to any one else. In spite of this, however, a clear demonstration in this regard would, on the applicant's theory, be an essential prerequisite to the right to letters, with the result that if an unexpected claim later arose and were established, it would appear that any right of the appointee to letters had at all times been non-existent and his letters must be revoked as a result of ·a fase suggestion of a material fact.

Any such interpretation of the legislative intent in this enactment would result in manifest absurdity and is, therefore, inadmissible on fundamental principles of statutory construction. (*Matter of Rouss,* ·221 N. Y. 81; 91; *Matter of Sitkin,* 151 Misc. 448, 457.)

It follows, therefore, that the sole consideration in the determination of whether or not a particular next of kin is entitled to receive letters of administration under subdivision 6 of section 118 of the Surrogate's Court Act, turns upon whether he is given a right by article 3 of the Decedent Estate Law to share in the net assets of the estate, and not at all on whether there will be any assets to distribute when the administration has been completed.

Under ordinary circumstances the result heretofore attained would be decisive of the right of the executrix of the sole next of kin of the decedent to receive letters of administration *de bonis non.* In the present instance, however, objections to her appointment have been interposed on the ground that she is " incompetent " within the meaning of section 94 of the Surrogate's Court Act. The establishment of the baselessness of these objections requires little more than their enumeration. They are, *first,* that she exhibited hostility to the claimants in the litigation by which the claimants sought to divert a substantial part of the estate from her son, the next of kin of the decedent; *second,* that her son in the course of that litigation made " scandalous " allegations respecting the claimants; *third,* that her son in his acts as administrator had been guilty of dishonesty in respect to the funds of the estate; and, *finally,* that she is improvident by reason of the fact that she has reached mature years without the accumulation of any appreciable store of this world's goods.

Respecting the first, it is sufficient to say that so long as human nature retains its familiar aspects, the instance will be noteworthy in which any person or those near to him views with delight or even complacency the effort of others to deprive him of an inheritance which he believes to be rightly his. When this human characteristic is reversed the millennium will have arrived and courts will be as extinct as the dinosaur and will probably be viewed with equally incredulous aversion.

The second and third alleged grounds of " incompetence " are novel to the point of naivete. It is said that " the sins of the fathers shall be visited upon the children," but the reversal of this process, at least in a case like the present, would be an innovation into the fields of law and morals which this court would hesitate to sponsor.

Finally, the fact that a twice married woman has failed to emulate the example of the late well-known woman financier, whereas it might to some reflect upon her judgment in selecting marital partners, could not do more without involving in opprobrium perhaps three-quarters of the wives and mothers of the land. Certainly it is no ground for denying her the rights expressly secured to her by statute.

It follows that the present application must in all respects be denied. In the event that no more serious charges are brought against the executrix of the deceased administrator than those presently advanced, letters of administration *de bonis non* will be granted her upon her making application therefor and qualifying in the usual manner.

Proceed accordingly.