In the Matter of the Estate of JAMES WINSLOW, Deceased.

[Surrogate's Court, Dutchess County, December 18, 1930.

*Medina & Sherpick* for New York Trust Company, as substituted trustee for Margaret Lanier Winslow under the will of James Winslow, deceased, petitioner.

*Hervey, Barber & McKee [Arthur William Barber* and *J. Seymour Montgomery, Jr.,* of counsel], for Lanier McKee and New York Trust Company, as executors of L. Lanier Winslow, deceased, respondents.

*Almuth C. Vandiver [Cornelius P. Cotter* of counsel], for Winslow Little, respondent.

*Tibbetts, Lewis & Rand [Murray D. Welch* of counsel], for Arthur W. Little, Jr., respondent.

*Samuel H. Kaufman* for Arthur W. Little, respondent.

*M. Glenn Folger*, as special guardian for L. Lanier Winslow, Jr., and others, infants.

GLEASON, S. This is an application for the construction of the will of the decedent, which was dated March 31, 1872, and probated in the Surrogate's Court of Dutchess county on January 5, 1875, the testator having died on or about July 18, 1874. After making specific bequests to his wife of household and similar articles, the testator by the 3d paragraph of the will provided in part as follows: " *Third.* I give, devise and bequeath unto my executors   *   *   * all the rest and residue of my estate, in trust   *   *   * to set apart for the benefit of my adult daughter Margaret Lanier Winslow the sum of $25,000, and to pay over to her   *   *   * the interest or income thereof for and during her natural life   *   *   * and to pay to my said wife   *   *   * the interest or income of $25,000 during the minority of my daughter Annie Gardner Winslow, to be by her expended   *   *   * in the support   *   *   * of   *   *   * Annie Gardner Winslow, until she shall arrive at twenty-one years of age, and thereafter said interest or income to my said daughter Annie Gardner Winslow   *   *   * for and during her natural life   *   *   * to pay over to my son Edward Winslow $25,000 to set apart for the benefit of my son James Norton Winslow $25,000, and to pay over to him   *   *   * the interest or income thereof until he shall arrive at thirty years of age, and then to pay over to him the $25,000."

Paragraph 3 then makes various bequests to collateral relatives, servants and charitable organizations, and continues in part as follows: " To pay over the interest or income of the remainder of my estate   *   *   * unto my said wife for her   *   *   * use, for and during her natural life, and on her decease to divide such remainder into four equal parts, and pay one of said parts unto my said son Edward Winslow, and to set apart one of said parts for the benefit of each of my said children James Norton Winslow, Margaret Lanier Winslow and Annie Gardner Winslow, and to pay to them for and during their natural lives, the interest or income thereof, and on the decease of any one of my three children last above named, to pay over to the next of kin and heirs at law of such deceased child, whatever my said executors may hold in trust for the benefit of such deceased child in the same manner as they would take had such child been the absolute owner of the trust property and died intestate."

The testator was survived by his wife and by his four children, Margaret Lanier Winslow, Annie Gardner Winslow, Edward

Winslow and James Norton Winslow. Margaret Lanier Winslow died in January, 1929, a resident of the State of New Jersey, having survived her sister, Annie Gardner Winslow, who died in 1878 unmarried; her brother Edward Winslow, who died in 1905; her brother, James Norton Winslow, who died in 1923; and her niece, Margaret Winslow Little, daughter of Edward Winslow, who died in 1928. Margaret Lanier Winslow was survived by her nephew, Lawrence Lanier Winslow (sometimes known as L. Lanier Winslow), who was the son of James Norton Winslow; by two grandnephews, Arthur W. Little, Jr., and Winslow Little, and by Arthur Little, who is the father of said grandnephews and who was the husband of Margaret Winslow Little, deceased. L. Lanier Winslow, the nephew of Margaret Winslow, died in October, 1929, leaving a will which has been probated in New York county, and pursuant to which letters testamentary were issued to Lanier McKee and the New York Trust Company. Under the terms of the will of James Winslow, upon the death of Margaret Lanier Winslow, the principal sums of the special $25,000 trust and of the residuary trust created for the benefit of Margaret Lanier Winslow terminated. All parties herein agree that distribution of the principal of the aforesaid residuary trust is to be made in accordance with the last clause of paragraph 3 of James Winslow's will, to wit: " The next of kin and heirs at law " of Margaret Lanier Winslow " in the same manner as they would take " had Margaret Lanier Winslow been the " absolute owner of the trust property and died intestate." It is contended on behalf of Winslow Little, Arthur Little, Jr., and Arthur Little that this last clause of paragraph 3 of the will does not determine who shall take the principal sum of the $25,000 trust fund, but that such sum should be distributed either as part of the residuary estate of the testator or as property as to which James Winslow died intestate. On the other hand, counsel for the executors of the estate of L. Lanier Winslow insist that it was the intention of James Winslow that the principal of said $25,000 trust fund should be distributed in accordance with provisions of said last clause of paragraph 3.

Although it is agreed by all that the aforesaid last clause of paragraph 3 of the will is applicable in determining who shall take the principal of the residuary trust, the parties differ as to who are such remaindermen. It is claimed on behalf of Arthur Little, Jr., and Winslow Little that in applying said last clause the Statute of Distribution of the State of New York as the same existed at the death of Margaret Lanier Winslow in January, 1929, should be invoked to determine who are the remaindermen of said residuary trust. Under this statute which permits representation among

brothers' and sisters' descendants in whatever degree, Arthur Little, Jr., and Winslow Little, as grandnephews of Margaret Lanier Winslow, would each take one-fourth of the principal sum of the residuary trust, and the executors of the estate of L. Lanier Winslow would take the remaining one-half of such sum. On the other hand, it is claimed on behalf of said executors that since Margaret Lanier Winslow died a resident of the State of New Jersey the Statute of Distribution of that State should be referred to in ascertaining who are to take the principal sum of such residuary trust, for the reason that the laws of New Jersey would apply to the distribution of property owned by her absolutely, and as to which she might have died intestate, and under the provisions of said last clause of paragraph 3 the principal of the trust fund should be distributed in the same manner as intestate property owned absolutely by Margaret Lanier Winslow.

The Statute of Distribution of the State of New Jersey, both at the time of the death of James Winslow and at the time of the death of Margaret Lanier Winslow, limited representation among collaterals to children of deceased brothers and sisters. Therefore, if the New Jersey law applies in this case the entire principal sum of the residuary trust should go to the executors of the estate of L. Lanier Winslow.

It is further claimed on behalf of said executors that if the New Jersey law is not to be applied the Statute of Distribution of New York at the date of the death of James Winslow in 1874 should be invoked, and as said law of New York at that time limited representation to children of deceased brothers and sisters, the executors would take the entire corpus of the residuary trust. As a final argument it is held on behalf of said executors that because of the 2d sentence of subdivision 12 of section 98 of the Decedent Estate Law of New York, as the same read in October, 1929, the New York Statute of Distribution in force at the death of Margaret Lanier Winslow in 1929, pertaining to the estate of James Winslow was the Statute of Distribution of New York as it existed in 1874, and that accordingly the entire principal sum of the residuary trust is payable to said executors.

This proceeding being for the construction of a duly probated last will and testament, the problem of the court is the ascertainment of the testator's intention in the disposition of his property by that will. This proposition is so well established that citation of authorities in its support is unnecessary. It is also elementary that the various rules and canons of construction employed by the courts in construing wills are of value only to the extent that they

act as guides to the judicial mind in ascertaining testamentary intention.

One of the most commonly referred to rules of construction is that the will should be construed as a whole and effect given, if possible, to all of the terms of the instrument. Another such rule established by the weight of authority is that in the absence of anything to indicate a contrary intent the members of a designated class of beneficiaries under a will are to be ascertained by reference to the laws of testator's domicile, whether the will refers to the testator himself as the foundation of a class or to another person who has a different domicile as the foundation of the class. (2 L. R. A. [N. S.] 447, and cases therein cited; *Cary* v. *Carman*, 116 Misc. 463.)

James Winslow, in providing by will for the disposition of his property at his death admittedly invoked the aid of a Statute of Distribution to determine the remaindermen of his residuary estate. The reasonable conclusion to be drawn from this fact is that the testator had in mind some particular Statute of Distribution, application of the provisions of which would result in the distribution of the residuary estate in the proportions desired by him. It is apparent from the phraseology of the testator's will that the instrument was drafted by an attorney or other person possessed of considerable legal knowledge, who, therefore, may reasonably be deemed to have been cognizant of the fact that the Statutes of Distribution of the various States and countries are not uniform.

In view of the foregoing and the fact that both the testator and Margaret L. Winslow were domiciled in New York State when the testator died, it is my conclusion that the aforesaid rule of construction that the *lex domicilli* should govern is applicable, and that accordingly the Statute of Distribution of the State of New York must be deemed to be the law pursuant to which the remaindermen under the residuary trust for the life of Margaret Lanier Winslow are to be ascertained.

Counsel for the executors of the estate of L. Lanier Winslow contend that the use of the words " absolute owner " makes inapplicable the rule of *lex domicilli* in that such words constitute an extraordinary and unusual term, and that applying the rule of construction that effect must be given to all the terms of the will, the conclusion follows that the law of the domicile of the life beneficiary at the time of her death, namely, the law of New Jersey, must be referred to in determining the remaindermen. In my opinion, however, the proper interpretation of the use of the words " absolute owner " is that they merely evince an effort on the part of the testator or the draftsman of his will to emphasize that the

heirs at law and next of kin of Margaret Lanier Winslow are to be the remaindermen rather than the heirs at law and next of kin of the testator.

The claim of the executors of the estate of L. Lanier Winslow that if the Statute of Distribution of New York is to determine the remaindermen of the residuary trust, then such statute as it existed at the death of the testator should be applied, is contrary to the well-established rule that where a testamentary gift of personal property is made to a class to be determined upon the happening of a future event, the members of that class are to consist of all the persons who answer the description and are capable of taking at the time of distribution. (*Matter of McKim*, 115 Misc. 720; *Matter of Baer*, 147 N. Y. 348; *Matter of Kimberly*, 150 id. 90; *Matter of Canfield*, 136 Misc. 551.) I hold, therefore, that the Statute of Distribution of the State of New York as it existed at the death of Margaret Lanier Winslow in 1929 should determine the remaindermen of the corpus of the residuary trust held for her life.

Section 98, subdivision 12, of the Decedent Estate Law of New York read, in October, 1929, as follows: " No representation shall be admitted among collaterals after brothers and sisters descendants. This subdivision shall not apply to the estate of a decedent who shall have died prior to May eighteenth, nineteen hundred and five."

The last sentence of said subdivision 12, while applicable to the estates of persons dying intestate before May 18, 1905, " does not contemplate or refer to the *wills* of persons dying before that date." (Italics mine.) (*Matter of Canfield*, 136 Misc. 551, 554.) Accordingly, since James Winslow died testate, having adopted the Statute of Distribution of New York in his will by reference, it is my determination that the 2d sentence of said subdivision 12 does not affect the distribution of the corpus of said residuary trust. It now becomes necessary to consider the manner in which the corpus of the special $25,000 trust for the life of Margaret Lanier Winslow should be distributed.

Viewing the decedent's will as a whole and keeping in mind the apparent care with which the instrument was drafted, it is my opinion that James Winslow's intention, as expressed in the will, was that the corpus of the special trust of $25,000 in which Margaret Lanier Winslow had an equitable life estate should be disposed of in accordance with the provisions of the last clause of paragraph 3 of the will, to wit, " to the next of kin and heirs at law of such deceased child * * * in the same manner as they would take had such child been the absolute owner of the trust

property and died intestate." In other words, the phrase " whatever my said executors may hold in trust " contained in said last clause of paragraph 3 refers to the corpus of such special trust of $25,000 as well as to the corpus of the residuary trust left for the life of Margaret Lanier Winslow. It will be observed that the $25,000 trust estate and the residuary trust estate for the benefit of Margaret Lanier Winslow, as well as similar estates for the lives of other children of the testator, were all created by paragraph 3 of the will, which was developed by the testator in logical sequence. At his first step the testator devised and bequeathed the residue of his estate (after the bequest of household furniture and similar articles to his wife by the 2d paragraph of the will) to his executors as trustees. Then, desiring to make definite minimum provision for his children out of such residue before disposing of any of the residue to collateral relatives and to servants and charitable institutions, the testator created for each of two of his children a life estate in the sum of $25,000, created a trust estate of $25,000 for his son James Norton Winslow until he should reach a specified age, and then gave the principal outright and gave outright to his fourth child, Edward Winslow, the sum of $25,000. Having thus provided for his children, the testator made various bequests to collateral relatives, servants and charitable institutions, and gave the widow a life estate in the balance of his property remaining undisposed of, with second life estates in such balance to three of his children, and with an outright gift to the fourth child after the death of the widow of one-fourth of such balance. One step then remained to be taken in order that the testator should not die partly intestate, this being the disposition of the remainder of the various trust funds not otherwise specifically disposed of. Accordingly James Winslow completed the testamentary scheme contained in paragraph 3 of the will by adding the last clause of said paragraph for the purpose of disposing of whatever interest in the residue of his estate remained undisposed of by the will.

In view of the foregoing I hold that Winslow Little and Arthur Little, Jr., are each entitled to receive one-fourth of the corpus of the residuary trust for the life of Margaret Lanier Winslow, and that the remaining one-half of such corpus should go to the executors of the estate of L. Lanier Winslow. I also hold that the corpus of the special $25,000 trust fund should be distributed among Winslow Little, Arthur Little, Jr., and said executors in the same proportions as the corpus of the residuary trust. Submit decree on notice construing will accordingly.