In the Matter of the Estate of JOHN T. WARING, Deceased.

Surrogate's Court, Westchester County, January 10, 1936.

*Scrugham & Arbuckle,* for Bankers Trust Company and others, trustees.

*Charles C. Fenno,* for Jessie T. Waring, individually and as executrix.

*Alfred L. Marilley,* for Leslie Arkell Waring and others.

*Otheman & Swain,* for Lewis Roberts and others.

*Joseph L. Rosenberg,* an assignee, in person.

*Herman D. Furman,* special guardian.

SLATER, S. The accounting trustee seeks a construction of the testator's will to determine to whom the principal of the trust fund should be distributed.

The testator's will was admitted to probate on March 7, 1907. A portion of the estate was to be held in trust for the son, John T. Waring, Jr., " and as to the distribution of the capital of the said trust fund, upon the death of the said John, I direct the said Trustees to pay the same over to the lawful descendants if any of the said John, in equal shares, *per stirpes* and not *per capita,* and if there be no such descendants to the next of kin of the said John, according to the laws of the State of New York."

John T. Waring, Jr., died June 18, 1935. He left no descendants, but he left a widow, sisters, nephews and nieces. The testator fixed the distribution, upon the death of the son John, to the son's lawful descendants, and, if there be no such descendants, to his next of kin according to the laws of the State of New York. The words " next of kin " are words of substitution and are a token of intent as to the time of vesting. (*Matter of Evans,* 234 N. Y. 42, 47; *Matter of Meahl,* 241 App. Div. 333.) No words of gift were used to indicate the vesting until the death of the life beneficiary when the division was to be made.

The main question is whether the widow of the deceased life beneficiary is a distributee. The question is new, in view of chapter

229 of the Laws of 1929, in effect September 1, 1930. It is briefly referred to by Justice MacCrate in *Matter of Osborn* (N. Y. L. J. Dec. 6, 1932, p. 2600) and by Justice Cotillo in *Trowbridge* v. *Donahue* (Id. July 17, 1935, p. 168). A case on similar facts, *Matter of Scudder* (156 Misc. 633), came before Surrogate Pelletreau, of Suffolk county, and was decided September 26, 1935. He held that the persons constituting the class, meaning heirs at law and next of kin, were determined by the Decedent Estate Law in effect when Charles B. Scudder, the life beneficiary, died on December 23, 1934, citing *Matter of Chalmers* (264 N. Y. 239, 243), decided April 17, 1934. An examination of the case on appeal in the *Chalmers* matter discloses that the deaths occurred prior to September 1, 1930. The decision in that case could only have referred to the old law.

*Matter of Meahl* (241 App. Div. 333 [May, 1934, Fourth Dept.]) has been cited as opposed to the right of a spouse to take as a distributee because of the words used by the court in its decision (at p. 335). The facts in that case are that the daughter predeceased the life beneficiary and died before September 1, 1930. The court held that, because of such death before the vesting period, the brother took the whole estate. The case throws no light on our question.

At the time Surrogate Pelletreau had *Matter of Scudder* before him, Surrogate Delehanty, one of the surrogates of New York county, also was considering the question, for, on October 3, 1935, in *Matter of Angarica* (157 Misc. 98, 100) he said: " The question now presented (apparently for the first time to a Surrogate's Court so far as research has disclosed) is whether the new statutory plan of descent and distribution enacted in 1929 and effective September 1, 1930, gives to a spouse a new and broader right of succession to property." Surrogate Delehanty held that the spouse took as statutory distributee.

*Matter of Germaine* (268 N. Y. 475), decided October 22, 1935, referred to the changed law of distribution (Laws of 1930, chap. 174), relating to subdivision 15 of section 83 of the Decedent Estate Law. In cases where vesting had not taken place and distribution decrees had not been made, the court held that the law had no retroactive effect and had no effect upon the distribution made before September 1, 1930. It said that it was not the intention of the Legislature to open up all estates which had been settled and distributed.

Referring to subdivision 15 of section 83, the court said: " These words have reference to estates which are in a process of settlement as to which there has been no final accounting and no distribution on a final accounting " (p. 480). The decision throws

an interpretive light upon the whole of article 3 of the new Statute of Descent and Distribution.

Prior to September 1, 1930, a spouse was neither an heir at law nor a next of kin. (*Tillman* v. *Davis*, 95 N. Y. 17; *Matter of Brown*, 153 Misc. 41, 43.) Section 81 of the Decedent Estate Law, effective September 1, 1930, relating to descent and distribution, says: " All distinctions between the persons who take as heirs at law or next of kin are abolished and the descent of real property and the distribution of personal property shall be governed by this article except as otherwise specifically provided by law. Whenever in any statute the words heirs, heirs at law, next of kin, or distributees, are used, such words shall be construed to mean and include the persons entitled to take as provided by this article."

Section 83, subdivision 4, names the spouse as a party who takes on distribution. The words " heirs at law and next of kin " prior thereto had a specific meaning and now by force of section 81 and section 83 of the Decedent Estate Law, effective September 1, 1930, all distinctions are removed and all those who take are called distributees. (*Matter of Gant*, 142 Misc. 446, 449.) After the new law became effective, a new group was substituted in place of the former class and the spouse was brought in by statute. The spouse becomes a distributee by force of statutory law, an added member to the class who take on distribution. The new group — heirs at law, next of kin and distributees — is the same by statutory construction. As a member of the Commission to Investigate Defects in the Law of Estates, I concur in the statement of its distinguished chairman referred to at page 101 of the *Angarica* opinion.

At page 102 of *Matter of Angarica*, Surrogate DELEHANTY wrote: " There still may remain instances where the words used by a testator must be given a meaning singular to the particular will." This is undoubtedly true, but such a meaning is not present in the instant case by express words or by implication.

The right to hold property, to take by inheritance or will, and to will property is not inherent in persons, but is a privilege granted by the State. The Legislature has a right to change its public policy at will. It has done so by enactment of the new law of descent and distribution. (*Matter of Andrus*, 156 Misc. 268, 279, 280; *Matter of Goldberg*, 157 id. 49, 60.)

Testators, unless it is otherwise declared, intend that the statutes of the State shall apply. Without a restraining definition or token found in a testator's will, the Legislature may change for him the grouping and the definition of " heirs at law and next of kin " during the administration of his estate. In this case

the will terms, as well as the life of the first taker, extended too long. The change in the public policy of the State overtook them. There is nothing permanent in life, except change itself. The testator fixed the vesting at a future date, the death of the son John, and he ran the chance of legislative change. No vested property rights are affected. The testator disclosed no intention other than to have the law of the State apply at the time of distribution. The statutory definition must be adopted as in force when the estate became absolutely vested. (*Matter of Canfield*, 136 Misc. 551; affd., 256 N. Y. 610.) The widow of the deceased income taker falls within the class upon whom benefits were conferred by chapter 229 of the Laws of 1929.

It is said by counsel that here the testator's widow is not asserting the right, but that it is the widow of the deceased life beneficiary of the testator. This makes no difference. The testator named a remainder class to take at a future time, being " the next of kin " of the said John, according to the laws of the State of New York. At the son's death, the law of the State of New York must control the distribution. In this case the State " changed horses " for the testator in the middle of the stream. A " new deal " was had for spouses. Such is the peril, or, may I say, sometimes the advantage of our civilization.

Proceed accordingly.